**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

            Plaintiff,

    v.

CARDINAL CONRACTING COMPANY,
LLC *et al.*,

            Defendants.

Civil Action No. 20-17094 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Plaintiff North American Specialty Insurance Company's ("NASIC") Motion for Summary Judgment. (ECF No. 24.) Defendants Cardinal Contracting Company, LLC ("Cardinal"), Red Lion Management, LLC ("Red Lion"), Quarry Master Supply, LLC ("Quarry Master"), Cardinal Marine Services, LLC ("Cardinal Marine"), Michael J. Stavola ("Michael Stavola"), and Andrea R. Stavola ("Andrea Stravola") (collectively, the "Stavolas" and with the other defendants, "Defendants" or "Indemnitors") opposed (ECF No. 29), and NASIC replied (ECF No. 33). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiff's Motion.

C.J. Hesse, Inc. ("Hesse") to complete the work. (PSUMF ¶¶ 13-14.) Hesse completed the work and submitted invoices to NASIC. (*Id.* ¶¶ 14-20.) In turn, NASIC notified Defendants of the costs that they would be responsible for because of Hesse's completion of the Project. (*Id.*)

With Cardinal terminated, NASIC also received remaining claims from third-party sub-contractors for payment for completed work that Cardinal had not yet paid for in the amounts of $395,315.62, $23,350.00, and $3,075.00. (*Id.* ¶¶ 28, 31, 34.) According to NASIC, it investigated those claims and settled them for $395,315.54, $15,000.00, and $3,075.00, respectively. (*Id.* ¶¶ 29, 32, 35.) NASIC notified Defendants of those payments and reminded them that they were responsible to indemnify NASIC. (*Id.* ¶¶ 30, 33.) As of the filing of the instant Motion, NASIC also received invoices in the amounts of $12,334.00 and $32,277.06 that are under investigation and have not yet been paid, but NASIC claims Defendants bear responsibility for any future payments on those claims under the Indemnity Agreement. (*Id.* ¶¶ 37-38.) In total, NASIC incurred $414,943.47 in losses on the payment surety bond. (*Id.* ¶ 39)

On November 24, 2020, NASIC filed this action. (*See generally* Compl.) The Complaint alleges causes of action for Indemnification (Counts I and II), Exoneration (Counts III), Subrogation (Count IV), and Quia Timet (Count V). The parties quickly proceeded to discovery and stipulated to completing fact discovery by November 19, 2021. (ECF No. 19.) After an informal review of the proposed Motion and further consideration of the parties' positions, however, the Honorable Tonianne J. Bongiovanni, U.S.M.J., permitted NASIC to file a motion for summary judgment to enforce the terms of the Indemnity Agreement before the November 19, 2021 discovery deadline. (*See* ECF No. 23; Licker Aff. ¶¶ 7, 17, ECF No. 24-3.)

II. **LEGAL STANDARD**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on

3

## III. DISCUSSION

### A. NASIC is Entitled to Indemnification Under the Indemnity Agreement

NASIC moves for summary judgment because it contends that it is entitled to indemnification based on the Indemnity Agreement. (*See generally* Pl.'s Moving Br., ECF No. 24-5.) Because Ocean County terminated Cardinal from the Project, but NASIC was still responsible for completing the Project, NASIC contends it is entitled to decide whether to pay a claim and to determine the amount of that payment. (*Id.*) Several facts underlying this Motion are not in dispute. For example, Defendants do not oppose NASIC's contention that the Indemnity Agreement covers NASIC's present claims. Rather, Defendants contend that NASIC is not entitled to summary judgment because a genuine dispute of material fact remains because it asserts that NASIC "engaged in bad-faith in discharging its obligations under the Bonds" and "now wrongly seeks to recover from Defendants." (Defs.' Opp'n Br. 5, ECF No. 29.) At bottom, Defendants argue that NASIC cannot execute its rights under the Indemnity Agreement because it violated the covenant of good faith and fair dealing. (*Id.* at 5-8.)

As a preliminary matter, in New Jersey, indemnity agreements are "interpreted in accordance with general principles of contract law." *Guarantee Co. of N. Am. USA v. SBN Enters., Inc.*, No. 09-5399, 2011 WL 3205318, at *2 (D.N.J. July 27, 2011) (citing *IFC, Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 317 (3d Cir. 2006)). Where the terms of an indemnity agreement are clear, courts must enforce the plain language of the agreement. *See id.* Accordingly, "summary resolution of indemnity disputes with unambiguous contractual provisions is appropriate." *Centennial Ins. Co. v. Horizon Contracting Co.*, No. 05-3917, 2008 WL 4791657, at *6 (D.N.J. Oct. 31, 2008). With that standard in mind, the Court turns its attention to the Indemnity Agreement at issue.

The Indemnity Agreement provides as follows:

prima facie evidence of Defendants' obligation to indemnify NASIC for its losses.[3] (Pl.'s Moving Br. 5.) As noted above, Defendants concede that NASIC suffered losses because Defendants' contract was terminated by Ocean County. *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, No. 12-03375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) (noting that a party that fails to contest an argument waives its opposition to it).

Having reviewed the parties' Indemnity Agreement and the summary judgment briefing in this matter, the Court first concludes that the unambiguous language of the Indemnity Agreement obligates Defendants to indemnify NASIC from and against any "liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest" in connection with performing their bond obligations. (Seifert Aff. Ex. 2, at ¶ 2.) After all, it is undisputed that NASIC incurred losses and expenses consistent with its bond obligations, including amounts paid to settle the bond claims and consulting and attorneys' fees, and other incidental costs. (*Id.* ¶¶ 41-57.) Thus, according to the plain language of the Indemnity Agreement and the undisputed facts of this case, Defendants are liable to NASIC for its losses and expenses. *E.g. Guarantee Co.*, 2011 WL 3205318, at *3("[T]he clear and unambiguous language of the Indemnity Agreement obligates the Indemnitors to indemnify [Plaintiff] from losses, costs, and expenses incurred in connection with the bonds issued by [Plaintiff]).

That does not end this Court's inquiry, however, since Defendants contend that NASIC engaged in bad faith in exercising its rights under the Indemnity Agreement. Relevant here, in New Jersey, all contracts contain an implied covenant of good faith and fair dealing. *See Naik v.*

---

[3] These losses include $414,943.47 in payment bond losses, $240,955.54 in performance bond losses and $87,540.04 in attorney and consulting fees. NASIC has received $140,764.08 from Ocean County, which it agrees reduces Defendants' indemnification obligations under the Indemnity Agreement. These losses do not include the $44,611.06 in additional claims that NASIC is currently investigating.

The Court concludes that Defendants have not raised a genuine dispute of material fact that NASIC breached the covenant of good faith and fair dealing. Defendants provide only the following examples that they claim are evidence of NASIC's bad faith conduct:

- Initially indicating in August 2019 that there was "very little work left to be done", which was a "total of $100k", and, thereafter, in September 2019, indicating that NASIC's obligations under the performance bond were not triggered. (DSSDMF ¶¶ 3, 10.)

- Engaging Hesse via a completion contract in the amount of $180,000, as of November 5, 2019 (the "Completion Contract"), notwithstanding that the Ocean County had not authorized NASIC's takeover of the Project, which did not occur until November 15, 2019, at the earliest, when NASIC submitted a proposed takeover letter (the "Takeover Letter"). (*Id.* ¶ 11.)

- Engaging Hesse via the Completion Contact in the amount of $180,000, as of November 5, 2019, notwithstanding that the Ocean County had indicated that the cost to complete the work was $146,210.09. (*Id.* ¶ 6.)

- Engaging Hesse via the Completion Contract in the amount of $180,000, as of November 5, 2019, notwithstanding that NASIC's consultant agreed and acknowledged that Hesse's completion bid proposal was grossly overstated. (*Id.* ¶ 12.)

- Accepting Hesse's completion bid proposal which included mobilization at 44% of the total cost, notwithstanding that the Project's specifications only permitted mobilization at a maximum rate of 4% of the total cost. (*Id.*)

- Providing in the Takeover Letter dated November 15, 2019 that the Contract balance was $169,125, despite the Ocean County having indicated days earlier on November 5, 2019, that the amount remaining on the Contract was $146,210.09. (*Id.* ¶ 10.)

- Engaging Hesse for the landscaping and related work despite the lack of execution of a change order, which was required pursuant to the Completion Contract. (*Id.* ¶ 14.)

- Initially seeking pre-discovery summary judgment in the amount of at least $697,738.91, and until August 25, 2021, failing to account for the funds in the amount of $140,764.08 received from the County for the Completion Work, all of which funds are a set-off to NASIC's purported Performance Bond losses.

(*Id.* ¶ 8; *see also* Defs.' Opp'n Br. 7.)

9

to engage in discovery. If Defendants believe that NASIC withheld certain discovery, they should have brought an appropriate motion before the Court during the discovery period.

In conclusion, the Court finds that there is no genuine dispute of material fact on whether Defendants are liable for NASIC's losses under the Indemnity Agreement.

**B.      NASIC is Entitled to Attorney and Consulting Fees Under the Indemnity Agreement**

Next, the Court considers whether NASIC is entitled to attorney and consulting fees. Defendants argue that the Court should reduce NASIC's requested attorney's fees in the amount of $63,207.57. (Defs. Opp'n Br. 10-11.) Defendants argue that because $24,605 of those fees were incurred primarily in relation to informal motion procedures before the Magistrate Judge, the Court should disregard those fees because the process was "a substantial waste of everyone's time." (*Id.* at 11.) In response, NASIC argues that it has established its right to recovery under the plain language of the Indemnity Agreement by providing an itemized list of expenses and Defendants have not rebutted that right simply by arguing that they did not find the informal motion procedure fruitful. (Pl.'s Reply Br. 8.)

The U.S. Court of Appeals for the Third Circuit instructs that when an indemnity agreement includes a "prima facie evidence" clause, the burden shifts to the indemnitor to "prov[e] that the costs incurred were not recoverable." *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997) (applying Pennsylvania law). To decide whether the indemnitor has met that burden, courts should look to "the precise language used in the agreement." *Id.* Although the Third Circuit set forth this standard under Pennsylvania law, courts in this District have likewise applied this reasoning. *See Centennial*, 2008 WL 4791657, at *9 ("Courts have long upheld prima facie evidence clauses and shifted the burden to the non-movant to show that a rational factfinder could determine that liability has not attached."); *Guarantee Co.*, 2011 WL 3205318, at *3 (noting that

11

2011 WL 3205318, at *4. As such, specific performance is appropriate in cases where such collateral has been demanded.

The Court concludes that NASIC is entitled to its full request for an award of collateral. Whether or not Crisdel is entitled to payment is not before this Court nor a valid reason to negate the plain terms of the Indemnity Agreement requiring specific performance. (*See* Seifert Aff. Ex. 2, at ¶ 3 (requiring Defendants to "immediately deposit with the Surety a sum of money as collateral security on the Bonds . . . . equal to the liquidated amount stated in any claim or demand plus the amount that the Surety deems sufficient to cover the Surety's estimate of the costs and expenses to defend, investigate and adjust the claim or demand."). With regard to the additional legal and consulting fees, the Indemnity Agreement provides NASIC the discretion to determine the amount of collateral it deems "sufficient to cover the Surety's estimate of the costs and expenses to defend, investigate and adjust the claim or demand." (Seifert Aff. Ex. 2, at ¶ 3.)

## IV.     CONCLUSION

For the above reasons, the Court grants NASIC's Motion. The Court will enter an Order consistent with this Memorandum Opinion.

                                                                                     _____
                                                                                     MICHAEL A. SHIPP
                                                                                     UNITED STATES DISTRICT JUDGE